# EXHIBIT C





**Whitesell Corporation**

Dear Customer:

Re:  Confirmation of Our Sales Quotation

Last week, we sent you an Announcement of the combination of Whitesell and Technifast.  For your convenience we are attaching a copy to this note.  Whitesell/ Technifast is pleased to continue supplying all your product requirements to your operations and to be a supplier-partner you can count on for engineered cold formed products.  Whitesell recognizes and appreciates you as a valued customer and is committed to providing you with world-class quality, prices and services to achieve success in your market.

As part of the TS16949 Business Contract Review compliance review process, we are reviewing your file of items the prior Technifast operations had received from your company including notices, PO's, Releases-EDI, and Faxes.  We are writing this to confirm the accuracy of the prices, quantities, addresses, schedules,  ship-to-, bill-to, info etc. in our quotation dated August  1, 2006, the date we acquired the Technifast's assets.  We ask that you review and confirm our TS16949 Contract Review form which is enclosed with your current information.  If there is anything that is not accurate,.please send a written note to your normal account representative at Technifast, so we can address and correct our files. But, if there is nothing incorrect with the accuracy of the information, there is nothing further required of you. If we do not hear from you within 7 days we will assume our quotation and the information we provided on your account is accurate and acceptable and we will continue to supply product accordingly.

Thank you again for you support and if there is anything, we can do for you in the future please let us know immediately.

Sincerely Yours,

Gerry Bates
Corporate Sales Manager
Whitesell Corporation


Attachment:  Announcement


Sent Via: ___Fax   ___Email   ___Reg Mail          _X__File Copy   Date faxed_8/18/08_  Initials __GB__



# Whitesell Corporation

# Announcement

### Acquires Technifast Industries, Inc.
### August 1, 2006

Effective August 1, 2006, Whitesell Corporation of Muscle Shoals, Alabama has completed the purchase of the operating assets of Technifast Industries, Inc. located in Carol Stream, Illinois. Whitesell is pleased that the former Technifast employees will continue to be part of Whitesell's Carol Stream Division. Whitesell's /Technifast Division will continue all of its manufacturing and distribution operations at the two former Technifast locations in Carol Stream. Whitesell's Technifast operations will continue to support the automotive industry with custom cold-formed steel products, as well as with a complete line of other Whitesell brands of fastening products.

CEO Neil Whitesell announced the purchase and explained that with the addition of Technifast's valuable line of custom manufactured fastener products, coupled with the Whitesell Group of companies already broad product line of OEM custom products, the addition of Technifast's capacity and capability further expands and enhances our domestic manufacturing base for the automotive market, as well as diversifying the overall Whitesell product lines.

Neil Whitesell also announced Steve Semmler, Vice President of Whitesell Corporation, will assume the responsibilities of the temporary General Manager of operations. Steve is an integral part of the Whitesell management team and will be leading the team in managing the Chicago manufacturing, distribution, and engineering operations until we make the permanent personnel placements. We are confident that Whitesell's Technifast Carol Stream Division will be able to meet the challenges of manufacturing and delivery of products in today's highly volatile automotive and steel markets. We anticipate a very smooth and seamless transition, which will be invisible to our customers, suppliers, and our new valuable employees.

As our newly expanded family ***Drives to Exceed our Customer's Expectations….***with Excellence in Quality and On-Time Delivery Assurances, which are trademarks of Whitesell and the Technifast team, this acquisition will provide even greater support to our automotive customers.

The Whitesell Corporation is a privately held global manufacturer, and distributor of fasteners, cold formed specials, wire forms, cold forged parts and a full range of class C products with over 1000 employees worldwide. Headquartered in Muscle Shoals, Alabama, Whitesell Corporation has 27 manufacturing/distribution facilities in the United States, Canada and Asia. For more information on Whitesell Corporation, please visit our web at: www.WhitesellCorp.com.



# Customer Quotation

| Quotation Date | Revision Number |
|---|---|
| August 17, 2006 | Multiple |

| Attention | Program | Customer RFQ Number | Whitesell Representative |
|---|---|---|---|
| Mr. Doug Kean | Multiple | Master Quotation | Matt Johannessen |

**Delivery Address**

BAE Industries
2965 Lapeer Road
Auburn Hills, MI 48326

**Document Address**

BAE Industries
24400 Sherwood
Centerline, MI 48015

**Payment Terms**

Net 30 Days

**Terms of Delivery**

FOB – BAE Auburn Hills

| Line | Revision Level | Customer Part Number | EAU | Release Quantity | Lead Time (Weeks) | Price/Each |
|---|---|---|---|---|---|---|
| 1 | 03 | 15029 | 3,500,000 | 425,000 | 10 | $ 0.10602 |
| 2 | E | 11312558 | 1,460,000 | 430,000 | 10 | $ 0.01546 |
| 3 | 02 | 15036 | 360,000 | 60,000 | 10 | $ 0.09930 |
| 4 | 02 | 15037 | 370,000 | 180,000 | 8 | $ 0.02500 |
| 5 | 01 | 15216 | 2,628,000 | 440,000 | 8 | $ 0.02532 |
| 6 | 04 | 15235 | 5,971,000 | 1,200,000 | 10 | $ 0.06626 |
| 7 | 01 | 15236 | 2,628,000 | 400,000 | 12 | $ 0.09040 |
| 8 | 01 | 15237 | 2,628,000 | 650,000 | 10 | $ 0.04961 |
| 9 | 02 | 15239 | 357,000 | 60,000 | 10 | $ 0.05930 |
| 10 | 02 | 15247 | 2,628,000 | 430,000 | 10 | $ 0.01770 |
| 11 | 02 | 15067 | 370,000 | 60,000 | 8 | $ 0.02915 |
| 12 | 03 | 15086 | 100,000 | 25,000 | 10 | $ 0.07806 |
| 13 | 02 | 15121 | 360,000 | 60,000 | 10 | $ 0.06176 |
| 14 | 02 | 15180 | 360,000 | 90,000 | 10 | $ 0.08323 |
| 15 | 01 | 15210 | 100,000 | 20,000 | 12 | $ 0.13956 |
| 16 | 02 | 15240 | 80,000 | 20,000 | 12 | $ 0.19539 |
| 17 | Ok to Tool | 15113 | 1,900,000 | 365,000 | 10 | $ 0.06190 |

| Line | Revision Level | Customer Part Number | EAU | Release Quantity | Lead Time (Weeks) | Price/Each |
|------|------|------|------|------|------|------|
| 18 | 01 | 15119 | 2,600,000 | 200,000 | 10 | $ 0.01984 |
| 19 | 02 | 15143 | 7,410,000 | 1,235,000 | 10 | $ 0.02418 |
| 20 | 02 | 15154 | 360,000 | 60,000 | 12 | $ 0.10343 |
| 21 | 02 | 15248 | 2,628,000 | 650,000 | 18 | $ 0.03487 |
| 22 | 03 | 15273 | 1,310,000 | 330,000 | 12 | $ 0.66981 |
| 23 | 02 | 15254 | 2,271,000 | 570,000 | 10 | $ 0.16351 |
| 24 | 01 | 15255 | 2,271,000 | 380,000 | 14 | $ 0.28802 |
| 25 | 02 | 15275 | 172,000 | 30,000 | 10 | $ 0.09890 |
| 26 | 04 | 1386936 | 172,000 | 30,000 | 10 | $ 0.11680 |
| 27 | 03 | 1399270 | 172,000 | 30,000 | 10 | $ 0.12890 |
| 28 | 04 | 1399275 | 172,000 | 30,000 | 10 | $ 0.22140 |
| 29 | 04 | 15289 | 172,000 | 30,000 | 14 | $ 0.49650 |
| 30 | 06 | 1312059 | 345,000 | 60,000 | 12 | $ 0.10940 |
| 31 | 04 | 15307 | 109,000 | 27,000 | 10 | $ 0.10757 |
| 32 | 01 | 1422293 | 862,000 | 144,000 | 10 | $ 0.05494 |
| 33 | 03 | 15309 | 600,000 | 100,000 | 10 | $ 0.05321 |
| 34 | 04 | 15319 | 400,000 | 65,000 | 12 | $ 0.17746 |
| 35 | 03 | 15286 | 218,000 | 50,000 | 10 | $ 0.09860 |
| 36 | 04 | 15287 | 218,000 | 50,000 | 10 | $ 0.10000 |
| 37 | 03 | 15288 | 109,000 | 18,500 | 12 | $ 0.29887 |
| 38 | 05 | 15301 | 690,000 | 115,000 | 10 | $ 0.03565 |
| 39 | 03 | 15323 | 1,650,000 | 275,000 | 10 | $ 0.08247 |
| 40 | 04 Marked | 15321 | 960,000 | 160,000 | 12 | $ 0.17320 |
| 41 | 02 | 15294 | 99,000 | 25,000 | 12 | $ 0.39360 |
| 42 | 04 | 15293 | 99,000 | 25,000 | 10 | $ 0.12940 |
| 43 | 02 | P0025047 | 1,200,000 | 300,000 | 18 | $ 0.03480 |

Note: Lead time will be quoted at time of order placement and are subject to market conditions for supply. This quotation is subject to the terms and conditions on the reverse side of this quotation and this comprises the entire agreement. All Quotations are in U.S. Dollars, valid for 7 Days from above date and supersede all previous quotations.

| | Invoice Address | Visit Address | Phone | Fax |
|------|------|------|------|------|
| Whitesell / Technifast | 450 Tower Boulevard | 450 Tower Boulevard   Carol Stream, IL  60188 | 630/221-8700 | 630/221-8702 |

## GENERAL TERMS AND CONDITIONS OF WHITESELL
## AS SELLER OF PRODUCT/SERVICES

**1.      ACCEPTANCE:**
Buyer has read, understands and acknowledges these terms and conditions and agrees that Buyer's acceptance, issuance of orders to Seller, use, payment or acceptance of product or services under this contract shall constitute Buyer's full, complete and unconditional acceptance of these terms and conditions only. If unable to accept these conditions, Buyer will notify Seller by returning any product shipments.

**2.      SHIPPING AND BILLING:**
Buyer agrees to make timely payment based upon Seller's most recent quoted price and payment terms.

**3.      CHARGES:**
In addition to the prices set forth on the face of Seller's Acknowledgement of any order or orders, Buyer shall pay any charges imposed by Seller at the time of shipment based upon (a) unanticipated costs incurred by Seller including, without limitation, costs of extra packing for export, special engineering or servicing, manufacturing tool charges and overtime and additional work authorized by Buyer and (b) Buyer's proportionate share of unanticipated increases in manufacturing costs including, without limitation, increases in costs of material, labor, plating and finishing. The Buyer will allow extra charges for authorized changes. In the event that Seller experiences unexpected cost increases, Seller will have the option to increase prices for future shipments under this contract, and Buyer may then (i) accept these future shipments at the new prices (which will constitute acceptance of the price change under this contract), or (ii) refuse to accept the future shipments and terminate this contract.

**4.      CHANGES:**
Orders are not subject to cancellation nor deferment of shipment unless Seller is indemnified against resulting loss as to the associated supply chain for all product on order. Cancellations must be approved by Seller, and Buyer must pay cancellation charges equal to Seller's costs incurred on the order plus liquidated damages in the amount of 20% of the total price of this canceled order. Any changes to this contract shall be made in accordance with Paragraph 21.

**5.      NON-CONFORMING PRODUCT:**
Buyer's exclusive remedy for breach of contract as to any product, and Seller's only liability for any such breach, shall be, at Seller's option, replacement or repair of such product. Under no circumstances will Seller be responsible for any direct, indirect, special, consequential, incidental or other losses or damages, or for any expenses incurred or sustained by Buyer and/or by any other person or persons arising from the use, sale, handling and/or the storage of any of the product covered hereby, or from other causes, and in no event will Seller's liability exceed the purchase price of such product.

**6.      FORCE MAJEURE:**
Any delay or failure of either party to perform its obligations shall be excused if Seller is unable to produce, sell or deliver, or Buyer is unable to accept delivery, buy or use, the product or services covered by this contract, as the result of an event or occurrence beyond the reasonable control of the party and without its fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain power, material, labor, equipment or transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party as soon as possible after the event or occurrence (but in no event more than 10 days thereafter).

**7.      WARRANTY:**
Seller makes no warranty with regard to merchantability or fitness for a particular purpose. Seller makes no warranty except that the product conforms to the specifications and drawings furnished by Buyer and accepted by Seller, in accordance with specifications established by the Industrial Fastener Institute and/or the American National Standards Institute. Seller agrees to utilize any product that may have a minor non-conformance to prior specifications where such non-conformance will have no functional or adverse effect in the application or its joint integrity. Seller makes no other warranty either express or implied.

**8.      INGREDIENTS DISCLOSURE; SPECIAL WARNINGS AND INSTRUCTIONS:**
Prior to and with the shipment of the product, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on the product, containers and packing) of any hazardous material that is an ingredient or a part of any of the product, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and precaution that will best prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the product, containers and packing shipped to Buyer.

**9.      INSOLVENCY:**
Seller may immediately terminate this contract without liability to Buyer in any of the following or any other comparable events: (a) insolvency of Buyer; (b) filing of a voluntary petition in bankruptcy by Buyer; (c) filing of any involuntary petition in bankruptcy against Buyer; (d) appointment of a receiver or trustee for Buyer; (e) execution of an assignment for the benefit of creditors by Buyer or (f) made or filed a plan or proposal for a compromise or an arrangement between the Buyer and any of its creditors, provided that such petition, appointment or assignment is not vacated or nullified within 15 days of such event. Buyer shall reimburse Seller for all costs incurred by Seller in connection with any of the foregoing, including, but not limited to, all attorney's or other professional fees.

**10.      TERMINATION FOR BREACH/ NONPERFORMANCE; SALE OF ASSETS OR CHANGE IN CONTROL:**
Seller reserves the right, without liability, to terminate all or any part of this contract, or to suspend shipment of product if Buyer: (a) repudiates or breaches any of the terms of this contract, or (b) fails to make timely payment per terms as specified by Seller; then Buyer does not correct such failure or breach within 10 days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from Seller specifying such failure or breach. In addition, Seller may, without liability, terminate this contract upon giving at least 60 days notice to Buyer, if Buyer (i) sells, or offers to sell, a material portion of its assets, or (ii) sells or exchanges, or offers to sell or exchange, or causes to be sold or exchanged, a sufficient amount of its stock that effects a change in the control of Buyer.

**11.      TERMINATION FOR CONVENIENCE:**
In addition to any other rights of Seller to terminate this contract, Seller may, at its option, immediately terminate all or any part of this contract, at any time and for any reason, by giving written notice to Buyer. Buyer understands that Seller's supply chain includes product produced both domestically and overseas. Upon such termination, Buyer shall immediately: (a) pay to Seller the contract price for all product or services that have been completed in Seller's supply chain in accordance with this contract and not previously paid for; and (b) pay to Seller all costs of inventory, work-in-process and raw materials in Seller's supply chain for furnishing the product or services under this contract, or use up such supply chain as completed product.

**12.      TECHNICAL INFORMATION DISCLOSED TO SELLER:**
Buyer agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information that Buyer shall have disclosed or may hereafter disclose to Seller in connection with the product or services covered by this contract.

**13.      INDEMNIFICATION:**
If Buyer performs any work on Seller's premises or utilizes the property of Seller, whether on or off Seller's premises, Buyer shall indemnify and hold Seller harmless from and against any liability, claims, demands or expenses (including attorney's and other professional fees) for damages to the property of or injuries (including death) to Seller, its employees or any other person arising from or in connection with Buyer's performance of work or use of Seller's property, except for such liability, claim, or demand arising out of the sole negligence of Seller.

**14.      NO ADVERTISING:**
Buyer shall not, without first obtaining the written consent of Seller, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the product or services covered by this contract, or use any trademarks or trade names of Seller in Buyer's advertising or promotional materials.

**15.      NO IMPLIED WAIVER:**
The failure of either party at any time to require performance by the other party of any provision of this contract shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this contract constitute a waiver of any succeeding breach of the same or any other provision.

**16.      NON-ASSIGNMENT:**
Unless otherwise specifically prohibited by applicable law, Buyer may not assign or delegate its rights or obligations under this contract without Seller's prior written consent.

**17.      CONFIDENTIALITY; NON-CIRCUMVENTION:**
Seller reserves all rights in all confidential information that Seller has provided or may provide to Buyer (including, but not limited to, information related to costs, pricing, drawings, engineering instructions, manufacturing specifications, testing processes), which information Buyer agrees will be kept confidential and shall not, without the prior written consent of Seller, be disclosed by Buyer, in whole or in part, other than to its employees who have a "need to know" such information and shall be informed of the confidential nature of the information. Buyer agrees that, for a period of 3 years after the end of this contract, no attempt will be made to directly or indirectly purchase product from Seller's established suppliers or otherwise circumvent Seller's established relationships and purchase arrangements. Buyer acknowledges that a breach of its obligations under this section would cause irreparable harm to Seller for which monetary damages alone would not be an adequate remedy. In the event of any breach or threatened breach of this section, Seller shall be entitled to appropriate equitable relief, including injunction and specific performance, in addition to any other rights and remedies that may be available to Seller at law. If Seller prevails in any suit or other proceeding to enforce this section or remedy any breach hereof, Buyer will pay Seller's reasonable attorneys' fees and other costs incurred in such suit or proceeding.

**18.      RELATIONSHIP OF PARTIES:**
Buyer and Seller are independent contracting parties and nothing in this contract shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

**19.      GOVERNING LAW; JURISDICTION:**
This contract is to be construed according to the laws of ALABAMA from which this contract is issued as shown by the address of Seller, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any conflict of law provisions that would require application of another choice of law. Any action or proceedings by Seller against Buyer may be brought by Seller in any court(s) having jurisdiction over Buyer or, at Seller's option, in the court(s) having jurisdiction over Seller's location, in which event Buyer consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Buyer against Seller may be brought by Buyer only in the court(s) having jurisdiction over the location of Seller from which this contract is issued.

**20.      SEVERABILITY:**
If any term(s) of this contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term(s) shall be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this contract shall remain in full force and effect.

**21.      ENTIRE AGREEMENT:**
This contract, together with the attachments, exhibits, supplements or other terms of Seller specifically referenced in this contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this contract and supersedes all prior oral or written representations and agreements. This contract may only be modified by a contract amendment issued by Seller. No term or conditions other than those stated above and no agreement or understanding, oral or written, in any way purporting to modify these terms and conditions shall be binding on Seller unless hereafter made in writing and signed by its authorized representative. Acceptance of the products or services under this contract shall constitute Buyer's acceptance of these terms and conditions only. Seller hereby objects to and rejects any and all additional or different terms proposed by Buyer, whether contained in Buyer's purchasing or shipping release forms, or elsewhere. Notwithstanding, if Buyer and Seller have mutually signed and entered into a long term agreement, then the terms of that long term agreement will continue in force and any terms herein which are inconsistent or in conflict with the terms of the long term agreement will be disregarded; however if the terms of that long term agreement are mute on a specific issue, these terms and conditions would apply to that issue.

| | Invoice Address | Visit Address | | Phone | Fax |
|---|---|---|---|---|---|
| Whitesell / Technifast | 450 Tower Boulevard | 450 Tower Boulevard   Carol Stream, IL  60188 | | 630/221-8700 | 630/221-8702 |